IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No: CCB-04-0052 |
| RICHARD SCHMIDT | * | |

     *   *   *   *   ***   *   *   *   *

## REPLY TO GOVERNMENT'S RESPONSE
## TO DEFENDANT'S MOTION TO ENFORCE JUDGMENT

Richard Schmidt, through counsel, Raymond C. Tarlton, Esquire, and Paul D. Hazlehurst, Esquire, hereby replies to the Government's Response to the Defendant's Motion to Enforce Judgement. As discussed below, the Government fails to recognize that Mr. Schmidt is effectively detained in his home without authority, and the modification it proposes to the Location Monitoring Agreement promulgated by the United States Probation office (Probation) would not remedy this issue. In support of his original motion and in reply to the Government's Response, Mr. Schmidt offers the following statement of facts, law and argument.

### Statement of Facts

Richard Schmidt is 78 years old. In 2005, he was convicted of Travel by a United States Citizen in Interstate and Foreign Commerce with Intent to Engage in a Sexual Act with a Minor in violation of 18 U.S.C. § 2423(b) and Engaging in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423 and was sentenced by the Honorable Andre M. Davis, United States District Judge for the District of Maryland to 180 months for each offense, with the sentences to run concurrently, as well as supervised release for life. Judgment was entered

against Mr. Schmidt on May 25, 2005.[1]

The Court imposed the statutory and standard conditions of supervised release in the judgment. Among additional conditions of release it ordered that Mr. Schmidt's:

> whereabouts will be monitored at all times by the U.S. Probation Office. To this end, the defendant will submit to whatever form of electronic monitoring, or monitoring by other means, the U.S. Probation Office has available to it . . . .

CCB-04-0052, ECF No. 28, p. 7, Condition 8.

The conditions imposed by the Court also prohibited Mr. Schmidt from "being within one mile of any public or private school property." *Id.*, Condition 12. The judgment contained an additional page setting forth restrictions entitled "No Contact Condition for Sex Offender" that is included in the electronically-filed judgment. It is not in the same format as the normal judgment in a criminal case and bears signatures from the year 2000, but apparently was incorporated into the Court's order. Under the terms of these conditions, Mr. Schmidt is put on notice that he must:

> avoid purposeful contact with children. This means I will not frequent places where it is certain children will be present. As an example, I will not shop at times when it will be more likely that children will be at a minimum or not present. I will not shop in a toy store or frequent video arcades and other similar places where children are known to frequent.

*Id.*, at p. 7, Condition a.

It adds:

I will avoid specific agencies, places, etc., where children may be present, and

---

[1]  The conviction for Travel by a United States Citizen in Interstate and Foreign Commerce with Intent to Engage in a Sexual Act with a Minor in violation of 18 U.S.C. § 2423(b) was ultimately vacated, but the sentence of 180 months and lifetime supervised release remained on the surviving count of conviction.

in general avoid all areas, such as walking in front of schools, frequenting playgrounds, parks, or attending carnivals or circuses, where children may be present.

*Id.*, Condition c.

Dating from his release from prison, Mr. Schmidt has been supervised by the U.S. Probation Office in Maryland. Following the filing of Mr. Schmidt's Motion to Enforce Judgment, Assistant United States Attorney Zachary Myers, then counsel for the Government, provided two documents to undersigned counsel that he had received from Probation. One, the "Location Monitoring Program, Participant Agreement" is included as an exhibit to the Government's Response (as well as to this Reply) and is specific to Mr. Schmidt's case. It was signed by Mr. Schmidt (without benefit of counsel) and a probation officer on March 22, 2018. *See* Exhibit 1, Location Monitoring Program, Participant Agreement. The second, Probation's "Local Rules" was not signed and appears to be generic to all monitoring. *See* Exhibit 2, Local Rules."

The Participant Agreement makes it very clear that Mr. Schmidt is required to remain in his home unless given prior approval by a probation officer. Paragraph 3 of the agreement states:

> I will remain in my approved residence at all times, except for activities approved in advance by my probation or pretrial services officer. Regularly occurring activities will be provided for in a written weekly schedule which will remain in effect until modified by my officer. I must obtain my officer's advance permission for any absences away from home that are not included in my written schedule.

Exhibit 1, p. 1, paragraph 3.

The same paragraph also has the term "Home Detention" in bold and circled at its

-3-

conclusion. *Id*. The document includes the following: "I will not deviate from my approved schedule except in an emergency. I will first try to get the permission of my officer." *Id*., paragraph 5.  The Local Rules document is even more explicit. It states that: "You are confined within the four walls of your home. This **does NOT** include your front or backyard." Exhibit 2, paragraph 6.  (Emphasis, including highlighting, in the original.)

### Statement of Law and Argument

18 U.S.C. §3583(d) sets forth standard conditions of release that should be imposed in specific cases. It allows Courts to impose additional conditions as long as they are "reasonably related" to the factors set forth in sections 3553(a)(1), (a)(2)(B), (a)(2)(C) and (a)(2)(B). 18 U.S.C. §3583(d)(1). The statute further mandates that additional conditions of supervised release "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C) and (a)(2)(D) and is consistent with an pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)." 18 U.S.C. §3583(d)(2) & (d)(2)(3).

The Government concedes that home confinement is not a condition of Mr. Schmidt's supervised release. *See* Government Response, p. 5, ¶ 1.[2] It does not and cannot, however, point to any condition contained in the Court's judgment that requires Mr. Schmidt to provide Probation any advance notice of leaving his home or requirement that he seek permission to do

---

[2]  Home confinement is permitted to be imposed as a condition of supervised release pursuant to 18 U.S.C. § 3583(d) and 3563(b)(19), but only as an alternative to incarceration. Mr. Schmidt has neither agreed to home confinement as a modification to the terms of his supervised release nor been found to have violated any supervised release condition(s) in a manner serious enough to warrant a revocation and the statutory sanction of home confinement in lieu of prison under § 3583(e)(4).

so. Nevertheless, the Government disagrees with Mr. Schmidt's contention that he is effectively and illegally being confined to his home by Probation's requirement that he seek advance approval to leave, stating "it is a distortion of reality to say that the Defendant is being confined to his home." *Id.* at 4. It proposes, however, that any problem can be alleviated by continuing to require Mr. Schmidt to request permission to leave but depriving Probation of the right to refuse travel unless "it would otherwise violate some other condition of supervised release." *Id.* In support of this proposal, the Government alleges that "advance notice is necessary to implement the location monitoring conditioning – a condition the parties agree is appropriate and lawful in this case." *Id.*, heading to paragraph 3.

I.       **Mr. Schmidt is subject to home detention without authority**.

The parties agree that "location monitoring," insofar as it consists of electronic monitoring by a Global Positioning System (GPS) is currently appropriate and lawful in Mr. Schmidt's case. That is the only point on which they agree. It is difficult to discern why the Government cannot see that Mr. Schmidt is currently being confined to his home. It is clear from both the Location Monitoring Agreement and the Local Rules provided by Probation that Mr. Schmidt is not free to leave without express permission obtained in advance. If Mr. Schmidt chose to leave without such permission, he would do so at risk of his freedom. As a result his freedom is restricted without authority. Though there is no order or condition holding him in this case, Mr. Schmidt, is at the very least, in *de facto* detention.

A.       **Home detention is not a condition of Mr. Schmidt's supervised release, and Probation cannot unilaterally add it.**

Before addressing the substance of the Government's contention that advance

scheduling is necessary to implement location monitoring, it is important to focus on what conditions of supervised release were actually ordered by the Court in regard to monitoring Mr. Schmidt's location. Additional Condition 8, as previously set forth, requires that Mr. Schmidt's whereabouts be monitored at all times. It specifies that this end will be accomplished by "whatever form of electronic monitoring, or monitoring by other means, the U.S. Probation Office has available to it." Electronic monitoring in this case is conducted using GPS observation which employs satellites in space to fix a person's position in real time. As the Government notes, "the GPS monitoring system provides the Defendant's probation officer with data points identifying the Defendant's location *as he travels* after departing the vicinity of his home." *Id.*, p. 3, final paragraph (emphasis supplied.) In other words, Mr. Schmidt's movements are being tracked in real time and that tracking is carried on 24 hours a day, seven days a week, 365 days a year. Mr. Schmidt has never objected to the use of GPS monitoring and does not object to it now. What he does contest, however, is that he is not permitted to leave his home – even while under GPS surveillance – without advance notice to and approval from Probation.

The Government argues, in essence, that GPS monitoring alone is insufficient to accomplish location monitoring and that it must be augmented by advance scheduling. That conclusion is incorrect given the directive  of 18 U.S.C. § 3583(d)(2), the language of the pertinent conditions in this case and the lack of any authority to support the Government's view. The statute requires that any additional condition of release "involve no greater deprivation of liberty than is reasonably necessary." GPS monitoring is perhaps the most invasive type of monitoring imaginable. To presume that the condition in the Court's judgment

requires something above and beyond GPS tracking would run afoul of the law. The language of Judge Davis' condition regarding monitoring can be reconciled with the statute, however, because the condition is written in the disjunctive. In other words, Probation may be permitted discretion to employ methods less draconian than the GPS system to verify Mr. Schmidt's location. There is some precedent for this. In *United States v. Durham*, the court noted:

> Special Condition 2 requires Durham to 'submit to any means utilized by the probation office to track his whereabouts or location at any time during supervised release.' After Durham objected to the condition at sentencing, the court noted it did not mean to say Durham needed a GPS unit attached to him, or some other like means, because "that probably would not be necessary," but the court noted the option was left to the probation office to decide whether such means were necessary.

618 F.3d 921, 933 (8th Cir. 2015)

The Government cites *Durham* as supporting the discretion of probation officers to devise the appropriate means to implement and enforce a condition of supervised release. Government's Response, p. 10. It ignores, however, the context of *Durham*. The language of the condition in that case is far different than in Mr. Schmidt's. There is no either/or choice in *Durham*. More important, the defendant in *Durham* was not objecting to the use of GPS monitoring and advance scheduling. He was contesting the imposition of GPS tracking alone. In fact, the Government cites no case where GPS tracking and advance scheduling were used and approved. In any event, *Durham* cannot and does not stand for the proposition that a probation officer has independent discretion as to how to implement a condition of release when that discretion would vitiate 18 U.S.C. § 3583(d)(2)'s prohibition that additional conditions of supervised release "involve no greater deprivation of liberty than is reasonably necessary."

**B.      GPS tracking is sufficient to ensure Mr. Schmidt abides by the
conditions of supervised release ordered by the Court.**

The Government states several times that advance notice of his movements is "crucial"

or "critical" to Probation's monitoring of Mr. Schmidt and that it "cannot be accomplished

effectively with GPS tracking alone." *See* Government Response, pp. 5, 8, 9, 11, 12. The

Government provides no authority for this proposition and no reasoning that withstands

scrutiny. It states that in order to deter the Defendant and protect the community "the USPO

must know not only the Defendant's current and past locations, it must have advance notice of

notice of where he intends to go." *Id*. at 8. But that claim is not supported.

The conditions of supervised release set forth in the judgment specify where Mr.

Schmidt cannot go and what he cannot do. *See infra*, p. 2 Advance notice of his movements

through a schedule provide no additional safeguard. If Mr. Schmidt intended to violate the

conditions of his release, there is no reason to believe that he would provide notice that he was

intending to travel to a prohibited place. On the other hand, regardless of any advance notice

he may give, if he actually travels to a prohibited place, GPS tracking will instantly reveal it.

While there is no benefit to the requirement of advance notice through a schedule, the

detriment to Mr. Schmidt's freedom is very real. It is clear that Probation is administering his

supervised release as if he were on home detention. He cannot leave his residence without

authorization. The suggested amendment to the Location Monitoring Agreement would not

solve this issue or provide any benefit above and beyond GPS monitoring. Automatic approval

of a schedule required in advance also does nothing to resolve the issue of spur-of-the-moment

trips that Mr. Schmidt should be free to make, such as going to an ATM to get cash to pay his

rent as was recounted in the Motion to Enforce Judgment, unless Probation commits itself to instantaneously respond to Mr. Schmidt, which it apparently cannot realistically do. Beyond that, there is no justification for a requirement of advance notice of travel of any kind especially one requiring advance permission for Mr. Schmidt to leave his home. The Government cites a slew of cases in which courts have found GPS monitoring to be sufficient to ensure compliance with the conditions of supervised release and to safeguard the public. *See e.g.*, Response, p. 9., quoting *United States v. LaFontaine*, 847 F.3d 974, 982 (8th Cir. 2017) ("GPS monitoring would provide law enforcement with advance notice if [defendant] sought to contact anyone he had previously threatened.")  Again, it has cited no case which approve GPS monitoring and the requirement for advance notice and permission before leaving a place of residence.

       **WHEREFORE**, the defendant, for the reasons set forth in this Reply and any reasons set forth at a hearing on the matter, asks this Court to enforce the judgment in this case and require the United States Probation Office to abide by the terms of that judgment.

_____/s/_____

**Raymond C. Tarlton, Esquire**
**Paul D. Hazlehurst, Esquire**
Bar No: 08156
Executive Plaza II, Suite 705
11350 McCormick Rd.
Hunt Valley, Md. 21031
(410) 773-9610
paul@lawpdh.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of March 2022, that a copy of the foregoing Reply was delivered via ECM/CF to all counsel of record.

_____/s/_____

Raymond C. Tarlton, Esquire
Paul D. Hazlehurst, Esquire